LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Taimur Alamgir (TA 9007)
148 West 24th Street, 8th Floor
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

KIMBERLY BARKER,
*on behalf of herself, FLSA Collective Plaintiffs,*
and the Class,

               Plaintiff,

    v.

LIGHTHOUSE GUILD INTERNATIONAL, INC.,
and GUILDNET, INC.

             Defendants.

---

**CLASS AND COLLECTIVE
ACTION COMPLAINT**

Jury Trial Demanded

Plaintiff, KIMBERLY BARKER, on behalf of herself, FLSA Collective Plaintiffs and Class Members, by and through her undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, LIGHTHOUSE GUILD INTERNATIONAL, INC and GUILDNET, INC. and states as follows:

## INTRODUCTION

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that she and others similarly situated are entitled to recover from Defendants: (1) unpaid regular and overtime compensation due to time shaving and an impermissible system of rounding employee hours down, (2) liquidated damages, and (3) attorneys' fees and costs.

2. Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), she and

other similarly situated are entitled to recover from Defendants: (1) unpaid regular and overtime compensation due to time shaving and an impermissible system of rounding employee hours down, (2) statutory penalties, (3) liquidated damages, and (4) attorneys' fees and costs.

3.  Plaintiff KIMBERLY BARKER further alleges that she was deprived of her statutory rights as a result of Defendants' discriminatory practices, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, as amended ("Title VII"), New York State Human Rights Law, New York Executive Law § 296 ("NYSHRL"), and New York City Human Rights Law, Administrative Code of the City of New York § 8-502 ("NYCHRL") and brings this action against Defendants for (1) an injunction ordering Defendants to cease its discriminatory practices as described herein; (2) back pay; (3) compensatory damages; (4) punitive damages; and (5) attorneys' and expert fees and costs.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 42 U.S.C. §§ 2000e *et seq.*, 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

5.  Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

6.  Plaintiff, KIMBERLY BARKER, for all relevant time periods was a resident of Kings County, New York.

7.  Corporate Defendants:

    a)  LIGHTHOUSE GUILD INTERNATIONAL, INC is a domestic not-for-profit corporation for the benefit of visually impaired individuals organized under the laws of the State of New York, with a corporate headquarters located at 15 West

65th Street, New York, New York 10023 and address for service of process located at 250 West 64th Street, New York. New York 10023. At all relevant times, LIGHTHOUSE GUILD INTERNATIONAL, INC is/has been the principal entity through which Defendants conduct business operations. LIGHTHOUSE GUILD INTERNATIONAL, INC. is responsible for all aspects of the centralized management and administration of all of Defendants' entities.

b) GUILDNET, INC, is a domestic corporation organized under the laws of the State of New York. GUILDNET, INC. was, at all relevant times, a fully integrated subsidiary of LIGHTHOUSE GUILD INTERNATIONAL. GUILDNET, INC operated as an insurance provider until March 2019, when it closed down its business operations.

8. At all relevant times, Defendants have existed as a "single integrated enterprise" for purposes of the FLSA and NYLL:

a. LIGHTHOUSE GUILD INTERNATIONAL, INC. and GUILDNET, INC. are commonly managed. Alan R. Morse, the president and CEO of LIGHTHOUSE GUILD INTERNATIONAL and other senior LIGHTHOUSE GUILD INTERNATIONAL executives maintained control of GUILDNET, INC. at all relevant times, .

b. In official correspondence, GUILDNET, INC. was styled "a program of Lighthouse Guild".

c. LIGHTHOUSE GUILD INTERNATIONAL, INC. and GUILDNET, INC. maintain centralized labor relations and human resources, and a single payroll system for employees at all facilities.

d. During Plaintiff's employment period, she was required to performed human

resources-related    tasks    with    respect    to    both    LIGHTHOUSE    GUILD
INTERNATIONAL, INC. and GUILDNET, INC., including, but not limited to
consulting with employees regarding HR and benefit related questions.

9.    At all relevant times, Defendants have existed as and continue to constitute an
"enterprise engaged in commerce" within the meaning of the FLSA.

10. At all relevant times, the work performed by Plaintiff and FLSA Collective Plaintiffs
was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

11. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b),
29 U.S.C. § 216(b), on behalf of all non-exempt employees, including, but not limited to human
resources staff, office staff (in all departments), assistants (in all departments), front desk services
employees (in all departments), benefit navigators (at GuildNet), event coordinators (at GuildNet),
and case aides (at GuildNet) employed by Defendants on or after the date that is six years before
the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

12. At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have
been similarly situated, have had substantially similar job requirements and pay provisions, and
are and have been subjected to Defendants' decisions, policies, plans, programs, practices,
procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay
them off the clock unpaid work due to time shaving.  The claims of Plaintiff stated herein are
essentially the same as those of the other FLSA Collective Plaintiffs.

13. The claims for relief are properly brought under and maintained as an opt-in collective
action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are
readily ascertainable. For purposes of notice and other purposes related to this action, their names

and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first-class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

14.  Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees, including, but not limited to  human resources staff, office staff (in all departments), assistants (in all departments), front desk services employees (in all departments), benefit navigators (at GuildNet), event coordinators (at GuildNet), and case aides (at GuildNet)employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

15. All said persons, including Plaintiff, are referred herein as "the Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member may also be determinable from Defendants' records.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

16. The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

17. Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of

Defendants. Defendants' policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures, all culminating in a willful unpaid off the clockwork due to time shaving.

18. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

19. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their

interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to, fashion methods to efficiently manage this action as a class action.

20. Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

21. There are questions of law and fact common to the Class which predominates over any questions affecting only individual class members, including:

a) Whether Defendants employed Plaintiff and the Class within the meaning of the New York law;

b) What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

c) At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Class members for their work;

d) Whether Defendants failed to provide Plaintiff and Class members all regular and overtime compensation owed, due to a policy of requiring off-the-clock work to be performed after shifts and during mandatory mid-shift breaks;

e) Whether Defendants subjected Plaintiff and Class members to an impermissible rounding system, resulting in unpaid regular and overtime compensation;

f) Whether Defendants provided to Plaintiff and Class members proper wage and hour notice, at date of hiring and annually, per requirements of the New York Labor Law; and,

g) Whether Defendants provided to Plaintiff and Class members proper wage statements with each payment of wages as required by New York Labor Law.

## STATEMENT OF FACTS

22. Plaintiff KIMBERLY BARKER was hired by Defendants (and/or their predecessors-in-interest) in 2008. Plaintiff BARKER's employment by Defendants terminated in March 2019.

23. Throughout her employment period, Plaintiff BARKER worked approximately 8.5-9 hours per day, 5 days per week, for a total of 42.5-45 hours per week. Likewise, FLSA Collective Plaintiffs and Class Members regularly worked in excess of 40 hours per week.

24. During her employment period, Plaintiff BARKER was compensated at a regular hourly rate of pay. Most recently, just prior to her termination by Defendants in March 2019, Plaintiff BARKER was compensated at a regular hourly rate of $32.50 per hour. Likewise, FLSA Collective Plaintiffs were compensated at regular hourly rates of pay.

25. At all relevant times, Plaintiff BARKER was required by Defendants to clock out mid-shift for a mandatory 30-minute long lunch period. However, at least twice per week, Plaintiff BARKER was not permitted by Defendants to actually take lunch and was made to work during her so-called lunch period. This policy caused Plaintiff BARKER to suffer unpaid regular and overtime wages for 1-1.5 hours each workweek. Likewise, FLSA Collective Plaintiffs and Class Members were routinely required to work during their lunch periods and, as such, suffered unpaid regular and overtime wages for at least 1 hour per week.

26. At all relevant times, Plaintiff BARKER was required by Defendants to clock out at

the precise time her shift was scheduled to end. However, approximately 2-3 times per week, Plaintiff BARKER was required to continue working beyond the time she was required to clock out, off-the-clock and without compensation, for 30 minutes to 1 hour. Due to this policy of mandatory post-shift off-the-clock work, Plaintiff BARKER suffered unpaid regular wages and overtime premium of 1.5-3 hours per workweek. Similarly to Plaintiff BARKER, FLSA Collective Plaintiffs and Class Members were required to clock out at the end of their assigned shifts, and then keep working off-the-clock for at least 1 hour per week, resulting in unpaid wages and overtime premium.

27. At all relevant times, for compensation purposes, the daily hours worked by Plaintiff BARKER, FLSA Collective Plaintiffs were rounded down to the hour, half-hour or quarter hour. Due to this impermissible rounding practice, Plaintiff BARKER, FLSA Collective Plaintiffs, and Class Members suffered approximately 30 minutes of unpaid regular wages and overtime premium per workweek.

28. During their employment by Defendants, Plaintiff never received a proper wage and hour notice upon hiring or upon changes in the information on the notice, as required under the NYLL. In fact, Plaintiff was never provided with any wage and hour notices by Defendants during her employment . Similarly, Class Members never received proper wage and hour notices upon hiring or upon changes in the information on the notice.

29. During their employment by Defendants, Plaintiff never received a proper wage statement. The wage statements provided did not reflect Plaintiff's hours worked and hourly pay rate accurately. Similarly, Class Members never received proper wage statements.

30. Defendants unlawfully failed to provide Plaintiffs and Class Members with wage and hour notices upon hiring, as required under the NYLL.

9

31. Plaintiff is African-American. Throughout Plaintiff's employment by Defendants, Plaintiff has suffered as a result of Defendants' discrimination against her on the basis of race, culminating in Plaintiff's unlawful, racially-motivated termination.

32. Through her employment, Plaintiff received wages in a lesser amount compared to her Caucasian-American colleagues who held the same roles and performed the same job duties. For example, when Plaintiff was hired in 2008, her yearly payment, which came to $35,000 in total, was substantially below the amount earned by Sharon Brookman. who was hired simultaneously for the same position (HR Assistant). Sharon Brookman worked fewer hours that Plaintiff, but received $40,000 in total on a yearly basis due to a higher hourly average pay rate.

33. Likewise, when Plaintiff was working as an HR department employee, her yearly wage came to $55,000, in aggregate, but her Caucasian co-workers working as HR employees received higher wages for performing the same duties – specifically, Mayya Etis received $68,000 yearly.

34. Similarly, Lisa Ferfoglia, a part-time employee in the HR department, received $178,000 annually, even though she routinely shirked duties and responsibilities that Plaintiff was forced to assume instead. Even though Plaintiff was doing Lisa Ferfoglia's job, she was paid less than 1/3 of what Lisa Ferfoglia earned.

35. During her employment with Defendants, Plaintiff's compensation with Defendants rose only minimally each year, while her Caucasian colleagues frequently received raises of up to $8,000 on an annual basis.

36. Plaintiff, despite a strong HR background and performance of her job duties, was consistently denied opportunities for advancement that were instead afforded to Caucasian employees. In fact, when Plaintiff applied internally for a position, Melissa Farber, the head of HR, refused to even consider Plaintiff's application, instead considering outside candidates who

were exclusively Caucasian.

37. When Plaintiff applied to Defendants for tuition reimbursement for her master's degree in Human Resources, Melissa Farber told Plaintiff that further education was wasted on her. Melissa Farber suggested to Plaintiff that, because she is African-American, there is no reason for her to grow professionally. Meanwhile, Ms. Farber approved tuition reimbursement for Plaintiff's Caucasian coworkers, although their master studies had no relevance to their careers and were not of any potential benefit to Defendants.

38. Plaintiff complained to Chief Financial Officer Christina Wong regarding her unequal compensation and treatment. However, following Ms. Wong's resignation, Defendants failed to address these disparities.

39. Throughout her employment period, Plaintiff performed human resources-related tasks with respect to both Lighthouse Guild International and Guildnet, including, but not limited to consulting with employees regarding HR and benefit related questions.

40. On August 21, 2018, Lighthouse Guild International announced Guildnet's closing. Caucasian Human Resources employees were relocated to other HR positions within Lighthouse Guild International even their work experience did not match with their new positions.  However, even though Plaintiff Barker was qualified to continue working at Lighthouse Guild International and, she was wrongfully terminated under the pretext that her work was unrelated to Lighthouse Guild International.

41. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class members in this litigation and have agreed to pay the firm a reasonable fee for its services.

## **STATEMENT OF CLAIM**

## COUNT I

## <u>VIOLATION OF THE FAIR LABOR STANDARDS ACT ON BEHALF OF PLAINTIFF</u>

## <u>AND FLSA COLLECTIVE PLAINTIFFS</u>

42. Plaintiff realleges and reavers Paragraphs 1 through 41 of this class and collective action Complaint as if fully set forth herein.

43. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).  Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

44. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

45. At all relevant times, the Corporate Defendant had gross annual revenues in excess of $500,000.00.

46. At all relevant times, Defendants failed in accommodate a record of worked hours and providing Plaintiff and FLSA Collective Plaintiffs with exact worked hours, generating time shaving and off-the-clock work.

47. Plaintiff is in possession of certain records concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs. Further records concerning these matters should be in the possession and custody of the Defendants. Plaintiff intends to obtain all records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

48. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective

Plaintiffs of their rights under the FLSA.

49. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

50. Due to the intentional, willful and unlawful acts of Defendants, Plaintiff, and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of time shaving and off-the-clock work plus an equal amount as liquidated damages.

51. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW ON BEHALF OF PLAINTIFF AND CLASS MEMBERS

52. Plaintiff realleges and reavers Paragraphs 1 through 51 of this class and collective action Complaint as if fully set forth herein.

53. At all relevant times, Plaintiff and Class members were employed by the Defendants within the meaning of the New York Labor Law, §§2 and 651.

54. Defendants willfully violated Plaintiff's and Class members' rights by failing to pay off-the-clock work.

55. Due to the Defendants' New York Labor Law violations, Plaintiff and Class members are entitled to recover from Defendants their unpaid off-the-clock work, reasonable attorneys' fees, liquidated damages, statutory penalties, and costs and disbursements of the action, pursuant to New York Labor Law.

## COUNT III

## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

56. Plaintiff realleges and reavers Paragraphs 1 through 55 of this class and collective action Complaint as if fully set forth herein.

57. Defendants violated Plaintiff's federally protected rights under Title VII by subjecting Plaintiff to a racially hostile work environment.

58. Defendants' conduct was intentional, malicious and in reckless disregard of Plaintiff's protected rights under Title VII.

59. Plaintiff obtained a "Notice of Right to Sue" from the US Equal Employment Opportunity Commission on May 28, 2019.

60. As a result of Defendants' unlawful employment practice, Plaintiff sustained emotional distress, including economic damages due to dissimilar wages, denied bonuses, refused incentives, and the past and future costs of bringing this action.

61. Due to Defendants' violation under Title VII of the Civil Rights Act of 1964, based on discrimination on the basis of race, Plaintiff is entitled to recover from Defendants it correspondent back pay, compensatory damages, punitive damages, attorneys' and expert fees and costs, and requests an injunction ordering Defendants to cease its discriminatory practices

### COUNT IV

## VIOLATION OF THE NEW YORK STATE EXECUTIVE LAW § 296

62. Plaintiff realleges and reavers Paragraphs 1 through 61 of this Complaint as if fully set forth herein.

63. Defendants violated Plaintiff's statutory protected rights under New York State Human Rights Law, New York Executive Law § 296, by subjecting Plaintiff to a racially hostile work environment.

64. Defendants' conduct was intentional, malicious and in reckless disregard of Plaintiff's protected rights under the New York Executive Law § 296.

65. As a result of Defendants' unlawful employment practice, Plaintiff sustained emotional distress, including economic damages due to dissimilar wages, denied bonuses, refused incentives, and the past and future costs of bringing this action.

66. Due to Defendants' violation under the New York Executive Law § 296, based on discrimination on the basis of race, Plaintiff is entitled to recover from Defendants its correspondent back pay and compensatory damages.

## COUNT V

## <u>VIOLATION OF THE NEW YORK CITY ADMINISTRATIVE CODE § 8-107</u>

67. Plaintiff realleges and reavers Paragraphs 1 through 66 of this Complaint as if fully set forth herein.

68. Defendants violated Plaintiff's statutory protected rights under the New York City Human Rights Law, Administrative Code of the City of New York § 8-107, by subjecting Plaintiff to racial discrimination and a racially hostile work environment.

69. Defendants' conduct was intentional, malicious and in reckless disregard of Plaintiff and the Class's protected rights under the New York City Administrative Code § 8-107.

70. As a result of Defendants' unlawful employment practice, Plaintiff sustained emotional distress, including economic damages due to dissimilar wages, denied bonuses, refused incentives, and the past and future costs of bringing this action.

71. Due to Defendants' violation under the New York City Administrative Code § 8-107, based on discrimination on the basis of race, Plaintiff is entitled to recover from Defendants its correspondent back pay, compensatory damages, punitive damages, and attorneys' and expert fees

and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of herself, FLSA Collective Plaintiffs, and Class members, respectfully requests that this Court grant the following relief:

a)   A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law.

b)   A declaratory judgment that the practices complained of herein are unlawful and violate Civil Rights Act Title VII, NYSHRL, NYCHRL, and NYC Administrative Code;

c)   An injunction against Defendants and their officers, agents, successors, employees, representatives and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

d)   An award of liquidated and/or punitive damages as a result of unpaid worked time due to time shaving and off-the-clock work according to the FLSA and New York Labor Law.

e)   An award of compensatory damages for her emotional suffering as a result of Defendants' unlawful discriminatory practices, pursuant to Title VII, NYSHRL and NYCHRL;

f)   An award of punitive damages for Defendants' unlawful discriminatory practices, pursuant to Title VII and NYCHRL;

g)   An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

h)   Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

i)   Designation of this action as a class action pursuant to F.R.C.P. 23;

j)    Designation of Plaintiff as Representative of Class; and

k)    Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on

all issues so triable as of right by jury

Dated: August 23, 2019

Respectfully submitted,
LEE LITIGATION GROUP, PLLC
CK Lee (CL 4086)
Taimur Alamgir (TA 9007)
148 West 24th Street, Eight Floor
New York, New York 10011
Tel.: (212) 465-1124
Fax: (212) 465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs, and the Class*

By:  */s/ C.K. Lee*
         C.K. Lee, Esq. (CL 4086)